1   Hugo Moreno, Trustee;
2   Jason Abraham-El, Trustee
    c/o 2554 Lincoln Blvd #412
3   Venice, California 90291
    info@venicekush.com
4
    *in eorum propria personas*
5

6

7

FILED
CLERK, U.S. DISTRICT COURT

OCT - 1 2021

CENTRAL DISTRICT OF CALIFORNIA
BY        *kmh*        DEPUTY

8          **UNITED STATES DISTRICT COURT FOR THE**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10  Jaime Moreno as an individual
    and also dba LA CBD LLC, a        CASE NUMBER: 2:21-CV-7852-RGK-KSx
11  California Limited Liability
    Company; and also dba
12  AMERICAN CANNABIS               Three-Judge Court
    COMPANY, a California
13  Corporation; and also dba       ANSWER AND
    VENICE KUSH #C3747812, a        COUNTERCLAIMS FOR
14  suspended California            DAMAGES, FOR:
    Corporation; and also dba
15  VENICEKUSH BRAND LLC            1.  FEDERAL TRADEMARK
    entity #202100611073, a             INFRINGEMENT(WILLFUL)
16  California Limited Liability         15 U.S.C §1114
    Company; Alfredo Maximilliano        LANHAM ACT §43(a);
17  as an individual and also dba
    VENICE KUSH #C4645873; &       2.  FALSE DESIGNATION OF
18  also dba VENICE KUSH                ORIGIN
    BRAND #C4784444, and also           15 U.S.C §1125(a);
19  dba VENICEKUSH
    COMPANY entity #C4784346,       3.  TRADEMARK DILUTION
20  a California Corporation;            15 U.S.C §1125(c);
    Lawrence Gutin as an individual
21  and also dba OCEAN BLUE        4.  MAIL FRAUD - FRAUDS
    VENTURES, INC.; Randolph            AND SWINDLES
22  Bernard Jesus Orozco as an          18 U.S.C. §1341;
    individual: and DOES 1- 100
23                                  5.  FALSE ADVERTISING
                                        15 U.S.C §1125(a);
24     Plaintiff,  Counterclaim-Defendants,
                                    6.  UNFAIR COMPETITION
25                                      15 U.S.C §1125(a);

26              v.                  7.  FEDERAL TRADEMARK
                                        COUNTERFEITING
27                                      18 U.S. Code § 2320;

28                                  8.  FRAUD AND FALSE
                                        STATEMENTS
                                        18 U.S.C. §1001(a);

| | |
|---|---|
| 1 Hugo Moreno, as trustee on<br>behalf of VENICEKUSH<br>2 BUSINESS TRUST dba<br>VENICEKUSH COLLECTIVE;<br>3 Jason Abraham-El, as trustee on<br>behalf of VENICEKUSH<br>4 BUSINESS TRUST dba<br>VENICEKUSH COLLECTIVE;<br><br>5<br>6              Defendants,<br>Counterclaim-Plaintiffs<br>7 | 9.  MISREPRESENTATION<br>    33 U.S.C. §931(a)(1);<br><br>10. PASSWORD TRAFFICKING<br>    18 U.S.C. § 1030(a)(6);<br><br>11. ACPA<br>    15 U.S.C. §1125(d);<br><br>12. PRELIMINARY<br>    INJUNCTION<br><br>13. INJUCTIVE RELIEF<br><br>14. DECLARATORY RELIEF |

ANSWER AND COUNTERCLAIMS TO COMPLAINT

Defendants Hugo Moreno, as trustee on behalf of VENICEKUSH
BUSINESS TRUST dba VENICEKUSH COLLECTIVE (herein
"Trustee Hugo"), and Jason Abraham-El, as trustee on behalf of
VENICEKUSH BUSINESS TRUST dba
VENICEKUSH COLLECTIVE ( herein "Trustee El" and when
referenced together both herein "Venicekush Trustees") *in eorum
propria personas*, answers Plaintiff Jaime Moreno, as an individual and
also dba LA CBD LLC, a California Limited Liability Company; and
also dba AMERICAN CANNABIS COMPANY, a California
Corporation; and also dba VENICE KUSH #C3747812, a suspended
California Corporation; and also dba VENICEKUSH BRAND LLC
entity #202100611073, a California Limited Liability Company (herein
"Plaintiff Jaime")'s complaint and counterclaims and joins under Rule
of Civil Procedure 19(a)(1)(A) as "Counterclaim-Defendants" with the
Plaintiff, Alfredo Maximilliano as an individual and also dba VENICE

KUSH #C4645873; & also dba VENICE KUSH BRAND #C4784444, and also dba VENICEKUSH COMPANY entity #C4784346, a California Corporation (herein "Mr. Alfredo") and Lawrence Gutin as an individual and also dba OCEAN BLUE VENTURES, INC.(herein "Mr. Lawrence"); and Randolph Bernard Jesus Orozco as an individual (herein "Mr. Randy"); (herein referenced together as "Counterclaim-Defendants") and DOES 1 - 100 inclusive, as follows:

1. Venicekush Trustees make a general denial of all allegations in the Plaintiffs complaint and the following specific denials in this as well as all the following paragraphs.

2. Venicekush Trustees admit the allegation(s) in paragraph 5 of the complaint that Defendants conducts business in Los Angeles County. Venicekush Trustees corrects an allegation of paragraph 5 of the complaint in such that Venicekush Business Trust with Venicekush Trustees is doing business as Venicekush Collective. Venicekush Trustees deny the rest of the allegations in paragraph 5 of the complaint.

3. Venicekush Trustees denies the allegations in paragraph 6 of the complaint.

4. Jason Abraham-El in special appearance (herein "Trustee El") steps forth as a co-defendant. He is a trustee of the Venicekush Business Trust, an interested party, and in responds to the allegations in paragraph 7.

5. Venicekush Trustees denies the allegations in paragraph 9 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraph 9 as if fully set forth herein.

6. Venicekush Trustees denies the allegations in paragraphs 10 through 21 of the complaint.

7. Venicekush Trustees admit in paragraph 22 of the complaint that "Since 2019, Moreno Plaintiffs have been renting a storefront business located at 1313 Oceanfront Walk in Venice, California from Lawrence Gutin" and lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) in the rest of paragraph 22 of the complaint.

8. Venicekush Trustees admits the allegations in paragraph 23 of the complaint.

9. Venicekush Trustees admits the allegations in paragraph 24 of the complaint with the exception of any reference, suggestion, connotation or assertion of any types of rights, ownership, title, authorization, consent, permission, acknowledgement or the like over the mark Venicekush/Venice Kush.

10. Venicekush Trustees denies the allegations in paragraph 25 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraph 25 as if fully set forth herein.

11. Venicekush Trustees denies the allegations in paragraph 27 of

the complaint.

12. Venicekush Trustees admits the allegation in paragraph 28 of the complaint that "...extensive operations and management of businesses with staffing for the businesses and acquisition of products for the businesses." Venicekush Trustees denies the rest of paragraph 28 of the complaint.

13. Venicekush Trustees admits the allegation in paragraph 29 of the complaint that "Defendants...had previously been inside the storefront business location at 1313 Oceanfront Walk..." Venicekush Trustees denies the rest of paragraph 29 of the complaint.

14. Venicekush Trustees denies the allegations in paragraphs 30 through 35 of the complaint.

15. Venicekush Trustees admits the allegation in paragraph 36 of the complaint that plaintiffs "...invested substantial capital...". Venicekush Trustees denies the rest of paragraph 36 of the complaint.

16. Venicekush Trustees denies the allegations in paragraphs 37 through 44 of the complaint.

17. Venicekush Trustees denies the allegations in paragraph 45 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraph 45 as if fully set forth herein.

18. Venicekush Trustees denies the allegations in paragraphs 46 through 47 and paragraphs 49 through 56 of the complaint.

19. Venicekush Trustees admits the allegations in paragraph 58 of the complaint.

20. Venicekush Trustees denies the allegations in paragraph 59 of the complaint.

21. Venicekush Trustees denies the allegations in paragraph 60 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraph 60 as if fully set forth herein.

22. Venicekush Trustees denies the allegations in paragraph 61 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraph 61 as if fully set forth herein.

23. Venicekush Trustees denies the allegations in paragraphs 62 through 65 of the complaint.

24. Venicekush Trustees lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 67 of the complaint.

25. Venicekush Trustees denies the allegations in paragraphs 68 through 71 of the complaint. Venicekush Trustees sets forth Defenses to the allegations in paragraphs 68 through 71 as if fully set forth herein.

26. Venicekush Trustees incorporates by reference its responses to the allegations in paragraphs 1 to 71 of the complaint as if fully set forth herein.

## DEFENSES

### Acquiescence

27. Plaintiff Jaime's claims against Trustee Hugo are barred, in whole, by the equitable doctrine of acquiescence, based on Jaime Moreno's conduct, inaction in circumstances where the Plaintiff(s) would be expected to object or take action through lack of responses to Notices sent to him, requesting verifiable and valid proof and evidence of his claims which, till date, has never been presented, Exhibit 1 is herein incorporated as reference as if set forth herein, regarding Trustee Hug's use of the allegedly infringing mark, which conduct was prejudicial to Trustee Hugo.
Plaintiff's claims against Trustee Hugo are therefore barred, in whole, by the doctrine of acquiescence.

### Estoppel and Laches

28. Trustee Hugo Moreno has been using Trustee Hugo mark since on or about 09/17/2010, Exhibit 2 is herein incorporated as reference as if set forth herein. On information and belief, Plaintiff Jaime is fabricating his First Use date of November 2009 and has no verifiable evidence to prove otherwise. Plaintiff Jaime has been aware of Trustee Hugo's use of its mark since at least 09/17/2010 when Plaintiff Jaime told Trustee Hugo on the day of registration for the domain and hosting for the Venicekush website

that he was "stupid" for doing it. Plaintiff's claims against Trustee
Hugo are therefore barred, in whole, by the doctrines of estoppel
and laches.

29. Plaintiff Jaime purports now a "new" First Use date of
November 2009 but has never uttered this in any engagement from
2010, when Trustee Hugo conveyed the news about his domain and
web hosting purchase to Plaintiff Jaime, till 2020. To applicants
knowledge, the earliest recorded history on record in regards to the
Plaintiff(s) and the mark "Venicekush" is in July of 2015 which,
happens to be approximately 2 months after the Plaintiff Jaime's
release from an approximate 28 month incarceration at a
Department of California Correctional Facility. Before this the
Plaintiff Jamie was at that time operating as Marijuana Millionaire,
Exhibit 3 is herein incorporated as reference as if set forth herein,
and creating his own product namely the "45 Day Hydro Formula"
Exhibit 4 is herein incorporated as reference as if set forth herein.
Plaintiff's claims against Trustee Hugo are therefore barred, in
whole, by the doctrines of estoppel and laches.

Failure to State a Claim

30. The complaint fails to state a claim upon which relief can be
granted based on information and knowledge of Trustee Hugo in
truth as well as the Plaintiffs own words, Exhibit 5 is herein
incorporated as reference as if set forth herein. With this in light the
entirety of Plaintiff's complaint hinges on only one particular
matter, that being the ownership of the mark. Without ownership of

said mark, non of the claims brought against the Defendants have standing. Plaintiff(s) admits himself of ownership of the mark being Trustee Hugos' property, Exhibit 5 is herein incorporated as reference as if set forth herein, and also self-claimed 2015 as the Plaintiff(s) First Use date in a USTPO opposition case which the Plaintiff Jaime had filed against Trustee Hugo in 02/2016 . The records have no controversy in regards to ownership. In light of these facts and upon a mass more of evidence that can be produced, all the allegations and claims of the Plaintiff(s) become moot and as such thereby Plaintiff(s) have no claims against Defendants for which relief can be granted. Plaintiff's claims against Trustee Hugo are therefore barred, in whole, by failure to state a claim upon which relief can be granted.

## Unclean Hands

31. Venicekush Trustees hereby include and reference paragraphs 28 through 30 as set forth herein, inclusive of Exhibits, and as basis for the equitable defense of unclean hands to show "any claim when the conduct is merely the plaintiff's alleged bad faith filing of the claim" (Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 429-30 (S.D.N.Y. 2010)).

## No Infringement

32. Venicekush Trustees reference herein the facts and exhibits for paragraphs 27 through 31 as set forth herein. As there is no infringement, there are no contractual interference matters, business

contractual relations, economic prospective or any other claims that can be made against Trustee Hugo or any other Defendants having the duty of loyalty to the rightful and reasonable protection and guard of Trustee Hugo's intellectual property, constitutional rights, and economic future for his family and constituents  from whom in Plaintiff Hugo's opinion are infringer's, counterfeiters,   conspirators and colluders of what does not belong to the Plaintiff(s).

## Trademark Ownership

33. Trustee Hugo has primae facie evidence of ownership of the mark, Exhibit 6 is herein incorporated as reference as if set forth herein, after moving through a TTAB opposition case initiated by Plaintiff Jaime in which the decision went against Plaintiff Jaime Exhibit 7 is herein incorporated as reference as if set forth herein and was decided with prejudice.

## COUNTERCLAIMS

34. This is a counter claim for FEDERAL TRADEMARK INFRINGEMENT (willful) under 15 U.S.C §1114 and the Lanham Act §43(a); FALSE DESIGNATION OF ORIGIN under 15 U.S.C §1125(a); TRADEMARK DILUTION under 15 U.S.C §1125(c); MAIL FRAUD - FRAUDS AND SWINDLES under 18 U.S.C. §1341; FALSE ADVERTISING under 15 U.S.C §1125(a); UNFAIR COMPETITION under 15 U.S.C §1125(a); FEDERAL TRADEMARK COUNTERFEITING under 18 U.S.C § 2320; FRAUD AND FALSE STATEMENTS under 18 U.S.C. §1001(a);

MISREPRESENTATION under 33 U.S.C. §931(a)(1);

PASSWORD TRAFFICKING under 18 U.S.C. § 1030(a)(6);

ACPA under 15 U.S.C. §1125(d); DECLARATORY RELIEF;

PRELIMINARY INJUNCTION; and INJUCTIVE RELIEF

Counterclaim-Plaintiffs seek $61,300,000.

## Jurisdiction

35. The Central District Court of California has original and supplemental jurisdiction over Defendants, Counterclaim-Plaintiffs Venicekush Trustees counterclaims because they arise under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b) as well as other violations of Federal codes, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367(a) because they are so related to Plaintiff Jaime's claims that they form part of the same case or controversy under Article III of the United States Constitution.

## Venue

36. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Plaintiff(s) Jaime and therein all represented entities relevant to this matter resides in this district and all counterclaim defendants being, Mr. Alfredo and therein all represented entities, Mr. Lawrence and therein all represented entities, and Mr. Randy and John Does 1 - 100 reside in the State of California/28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district/28 U.S.C. §

1391(b)(2), in that a substantial part of the property that is the
subject of the action is situated in this district/28 U.S.C. §
1391(b)(3), in that Plaintiff Jaime and all represented entities are
subject to personal jurisdiction in this district with respect to this
action, and there is no other district in which the action may
otherwise be brought, Exhibit 8 is herein incorporated as reference
as if set forth herein for Plaintiffs' and all therein represented
entities agreement to the venue.

Parties

37. Defendant-counterclaim plaintiff Trustee Hugo is doing
business on behalf of the VENICEKUSH BUSINESS TRUST
doing business as VENICEKUSH COLLECTIVE at 2554 Lincoln
Blvd #412, Venice, California 90291. Trustee Hugo is the party
who has prima facie evidence of his ownership and intellectual
property rights for said trademark at the subject of the controversy.

38. Defendant-counterclaim plaintiff Trustee El is doing business on
behalf of the VENICEKUSH BUSINESS TRUST doing business as
VENICEKUSH COLLECTIVE at 2554 Lincoln Blvd #412, Venice,
California 90291. Trustee El visits in special appearance.

39. Defendant-Counterclaim plaintiff(s) Venicekush Trustees
incorporates by reference as if fully set forth herein paragraphs 1 - 3
for Plaintiff Jaime, address being 333 Washington Blvd. # 505
Marina Del Rey, Ca 90292. The following entites are also parties
therein represented by Plaintiff Jaime; LA CBD LLC, a California

Limited Liability Company; AMERICAN CANNABIS

COMPANY, a California Corporation;VENICE KUSH

#C3747812, a suspended California Corporation; and

VENICEKUSH BRAND LLC entity #202100611073, a California

Limited Liability Company. It is Plaintiff Jaime's continued and

willingly torturous fraud, deceit, infringement, and business

sabotage against the Defendant-counterclaim plaintiff(s) that bring

these counterclaims for relief to this court.


40. Plaintiff-counterclaim defendant Alfredo Maximilliano as an

individual and also as representation therein for the following

entities: VENICE KUSH #C4645873; VENICE KUSH BRAND

#C4784444; and also VENICEKUSH COMPANY entity

#C4784346, a California Corporation. Alfredo Maximiliano

doing business at is 1515 7TH ST #36 SANTA MONICA CA

90401. Plaintiff-counterclaim defendant Alfredo Maximilliano

being subject to such claims for his participation in the knowing

collusion against the Defendant-Counterclaim plaintiff(s) after being

given Notice of trademark violations.


41. Plaintiff-counterclaim defendant Lawrence Gutin as an

individual and also as representation therein for the following entity;

OCEAN BLUE VENTURES, INC. Lawrence Gutin doing business

at is 2554 Lincoln Blvd #379, Venice, California 90291.

Plaintiff-counterclaim defendant Lawrence being subject to such

claims for his participation and knowledge in the collusion against

the Defendant-Counterclaim plaintiff(s) after being given from

encounters prior and Notice of trademark violations by

Plaintiff-counterclaim defendant Lawrence Gutin .

42. Plaintiff-counterclaim defendant Randolph Bernard Jesus Orozco as an individual. Plaintiff-counterclaim defendant Randolph Bernard Jesus Orozco resides at 11693 San Vincente Blvd #247, L.A., Ca 90049. Randolph Bernard Jesus Orozco as an individual is subject to such claims for his participation in the knowing collusion, infringement and funding of the Plaintiff, Counterclaim-defendants against the Defendant-Counterclaim plaintiff(s) after being given Notice of trademark violations.

Facts

43. On the information and knowledge of the Defendant Counterclaim-plaintiff Trustee Hugo, during the period after the Counterclaim-defendant Jaime was released from incarceration in mid year of 2009 until he went back into incarceration in 2012, he never used, marketed, advertised or operated as Venicekush/Venice Kush. During the same time period Plaintiff Counterclaim-defendant Jaime operated as Marijuana Millionaire utilizing American Cannabis Company as his commercial vessel.

44. Defendant Counterclaim-plaintiff Trustee Hugo references and incorporates paragraph 43 as set forth herein. During the same period Defendant Counterclaim-plaintiff Trustee Hugo created and first utilized the mark "Venicekush/Venice Kush in commerce when Defendant Counterclaim-plaintiff Trustee Hugo purchased a combination website

domain and hosting plan for www.venicekush.com, the hosting and website being advertising in commerce. Defendant Counterclaim-plaintiff Trustee Hugo claims a First Use date of 09/17/2010.

45. During the incarceration period time from 2012 until Plaintiff Counterclaim-defendant Jaime's release from incarceration in 2014, Counterclaim-plaintiff Trustee Hugo had been helping and assisting Counterclaim-defendant Jaime (as a reasonably sound sibling would do when their brother needs help/Exhibit 9 is herein incorporated as reference as if set forth herein) with the maintenance of his businesses during the time of this of his incarceration. Counterclaim-defendant Jaime has always operated his businesses wholly apart and separate from any of the business ventures of Counterclaim-plaintiff Trustee Hugo. At no time during this period or any other time after that or before that time has Counterclaim-plaintiff Trustee Hugo ever been in the employ of Counterclaim-defendant Jaime. No talks or any other contractual arrangements or employment conversations have ever been discussed or even mentioned between the parties Counterclaim-plaintiff Trustee Hugo and Counterclaim-defendant Jaime.

46. Referenced and incorporated as if set forth herein are Exhibits 10. They show early usage of the mark between the periods of September of 2010 till June of 2015.

47. During the time of Counterclaim-defendant Jaime's

incarceration between approximately May 12, 2012 and his release approximately on June 28, 2014 he hand wrote many times to Counterclaim-plaintiff Trustee Hugo. In one of those letters Counterclaim-defendant Jaime himself admits to the ownership of the trademark being that of Counterclaim-plaintiff Trustee Hugos'/Exhibit 5 is herein incorporated as reference as if set forth herein.

48. After the release of Counterclaim-defendant Jaime from prison, it was Counterclaim-plaintiff Trustee Hugo who picked him up from the prison facility and took him to Counterclaim-plaintiff Trustee Hugo's home as Counterclaim-defendant Jaime had no place with which to lay his head.

49. Counterclaim-plaintiff Trustee Hugo, began to notice the difference in the behavior of Counterclaim-defendant Jaime between the period of his release in 2014 up until just before an event called the HIFI event in May of 2015 (the event being akin to a cannabis exposition conference). Exhibit 11 is herein incorporated as reference as if set forth herein is a response letter to Counterclaim-defendant Jaime referenced and incorporated as set forth herein describing the incident and events that transpired therein at this event.

50. Referenced and incorporated as if set forth herein is paragraph 49. After the HIFI event, Counterclaim-defendant Jaime started to escalate his torturous interference and has continued these actions until today, some of these key actions being expounded upon in the

following paragraphs. To Counterclaim-plaintiff Trustee Hugo's information and knowledge, it was around this time that the Counterclaim-defendant's Alfredo Maximilliano and all represented entities therein, Lawrence Gutin and all represented entities therein, and Randolph Bernard Jesus Orozco as an individual colluded and conspired with Counterclaim-defendant Jaime to fraudulently convey and profit through unjust enrichment with Counterclaim-plaintiff Trustee Hugo's intellectual property.

51. Counterclaim-defendant Mr. Randy has had personal relationship with Counterclaim-plaintiff Trustee Hugo since about elementary school. Exhibit 12 is herein incorporated as reference as if set forth herein showing at a young age, Counterclaim-plaintiff Trustee Hugo, Counterclaim-defendant Mr. Randy and Counterclaim-defendant Jaime. Counterclaim-defendant Mr. Randy has had knowledge of Counterclaim-plaintiff Trustee Hugo's trademark ownership since around 2014 when Counterclaim-plaintiff Trustee Hugo spoke with Counterclaim-defendant Mr. Randy in a phone call conversation. Counterclaim-defendant Mr. Randy at this time was attempting to reach Counterclaim-defendant Jaime who was purposefully not answering Counterclaim-defendant Mr. Randy's phone calls because, as stated by Counterclaim-defendant Jaime "...he's a little bitch" but reversed his assessment when Counterclaim-plaintiff Trustee Hugo told Counterclaim-defendant Jaime that Counterclaim-defendant Mr. Randy had recently received a sum of money. Incorporated as reference set forth herein paragraph 23 of the Counterclaim-defendant Jaime's complaint. Notice was

also made to Counterclaim-defendant Mr. Randy. Exhibits 13 are herein incorporated as reference as if set forth herein

52. Counterclaim-defendant Mr. Alfredo has had a knowledge of Counterclaim-plaintiff Trustee Hugo since about 1997 or 1998 when he was living across the alley from Counterclaim-plaintiff Trustee Hugo.

53. Counterclaim-defendant Mr. Lawrence has had personal knowledge of Counterclaim-plaintiff Trustee Hugo since about the summer of 2018. Counterclaim-plaintiffs Venicekush Trustees suspects Counterclaim-defendant Mr. Lawrence has had a relationship since at least 2017 with Counterclaim-defendant Jaime of which Counterclaim-plaintiffs Venicekush Trustees were completely unaware of until recently.

54. In the summer of 2015, Counterclaim-defendant Jaime with intent to commit cyber piracy, attempted to fraudulently convey the website www.venicekush.com away from Counterclaim-plaintiff Trustee Hugo but was subsequently blocked and returned after an investigation by a company called Secure Server, whom handles domain and web-hosting investigations.Exhibit 14 is herein incorporated as reference as if set forth herein.

55. On or around 09/15/2016 Counterclaim-plaintiff Trustee Hugo filed an application to register his "Venicekush" trademark. Although Counterclaim-defendant Jaime purports now a First Use date of November 2009, claimed a First Use date of May 2015

when Counterclaim-defendant Jaime himself filed an opposition to
Counterclaim-plaintiff Trustee Hugo's registration application for
his trademark. During the opposition case
Counterclaim-defendant Jaime had two different attorneys withdraw
from his case based upon Counterclaim-defendant Jaime's
character. Evidence of one of the attorneys' withdrawal and cause
for such is Exhibit 15, herein incorporated as reference as if set
forth herein. Throughout the entire proceedings
Counterclaim-defendant Jaime admitted no evidence of his claim
on to the record within the five year period the opposition case had
endured, including Counterclaim-defendant Jaime's November
2009 First Use date. On 04/29/2021, the USTPO issued a decision
in the matter in favor of Counterclaim-plaintiff Trustee Hugo with
prejudice. Exhibit 7 is herein incorporated as reference as if fully set
forth herein.

56. On or about 05/28/2018, Counterclaim-plaintiff Trustee Hugo
signed a lease agreement with Counterclaim-defendant Mr.
Lawrence to open a Venicekush retail shop at 1313 Oceanfront
Walk, Venice Ca 90291. During this period Counterclaim-defendant
Jaime was operating another retail store in an
alley adjacent to the Venice beach boardwalk named the Venice
Circle. Exhibit 16 is herein incorporated as reference as if fully set
forth herein. Counterclaim-defendant Mr. Lawrence at the time had
complete awareness of the separate and contentious nature between
Counterclaim-plaintiff Trustee Hugo and Counterclaim-defendant Jaime.
Counterclaim-plaintiff Trustee Hugo handmade a large sign with the
name Venicekush for this store but Counterclaim-defendant Mr.
Lawrence decided to buy a sign with the name Venicekush Brand, a

company creation of Counterclaim-plaintiff Trustee Hugo. Around
September 03, 2018, Counterclaim-defendant Mr. Lawrence told the
Counterclaim-plaintiffs Venicekush Trustees we would not be able to
keep the store open as Counterclaim-defendant Mr. Lawrence made the
statement that operation needed to be ceased as the building needed
earthquake retro fitting. Exhibit 17 is herein incorporated as reference
 as if set forth herein. Counterclaim-defendant Mr. Lawrence had
knowledge at the time of the ill nature of the relationship between
Counterclaim-defendant Jaime and Counterclaim-plaintiff Trustee
Hugo. Thereafter, within a few months, Counterclaim-defendant Mr.
Lawrence decided to lease to Counterclaim-defendant Jaime.

57. After four years of the TTAB opposition case that
Counterclaim-defendant Jaime filed with the USTPO,
Counterclaim-defendant Jaime made the decision to file various State
of California trademarks for Counterclaim-plaintiff Trustee
Hugo's Venicekush mark as early as 01/11/2020. Exhibit 18 is herein
incorporated as reference as if set forth herein. Within said Exhibit,
Counterclaim-defendant Jaime claims a self admitted First Use date of
05/30/2015. Four months and three fraudulent state trademarks later on
05/22/2020, Counterclaim-defendant Jaime after an eleven year delay
decides to use 11/05/2009 as his First Use date. This is the first place
anywhere and the first time in any verifiable medium that
Counterclaim-defendant Jaime has claimed this "new" First Use date.

58. Thus far in these facts, a general order of the chronology of matters
has been given for the simplicity and ease of understanding of the
court. In keeping with this particular theme, being introduced now are

the facts concerning Counterclaim-defendant Jaime's supposed First Use date being 11/05/2009. The specimen being used to make this claim is attached as Exhibit19, herein incorporated as reference as if fully set forth herein. This image is the one used in the fraudulent State of California trademark application to attempt to justify Counterclaim-defendant Jaime's second First Use claim. Counterclaim-plaintiffs Venicekush Trustees would like to draw the courts attention to two particular details within this image. The first detail being the word element VENICEKUSH being much more crisp in detail than the other

word elements in the image and the other detail being the other word elements

in the image having a noticeably lower resolution than the VENICEKUSH element. If all the elements within the image would have been created at the same time, then the sharpness of all the word elements in the image would be uniform amongst each other. This is not so due in part to the resolution of the image being compressed twice versus the word element VENIECKUSH in the upper left corner which seems to be compressed only once. The reason for this being that the word element VENICEKUSH was placed in the image after the first time the original image had already gone through a compression process when the image file was created. Any additional compression processes after the initial creation of the image, such as editing or "photoshoping" an already created image, will always yield a further degraded resolution of the original elements in the output file.

59. On information and knowledge, Counterclaim-plaintiffs Venicekush Trustees allege that the digital image with the VENICEKUSH mark,

herein referenced and set forth as Exhibit 19, has no verifiable evidence of its usage or its display to the public or its usage in commerce before the year 2020.

60. On information and knowledge, Counterclaim-plaintiffs Venicekush Trustees purport Exhibits 20, 21, 22, herein incorporated as reference as if fully set forth herein, is the true original digital image used by counterclaim-defendant Jaime in the promotion of his titled work "45 Day Hydro Formula".

61. Exhibits 23, 24, 25, and 26, are herein incorporated as reference as if fully set forth herein. They display during the period of 2009 till 2020, the true original image as used in commerce and the name of the said product being "45 Day Hydro Formula". Also the words of Counterclaim-defendant Jaime in
regards to the originality of the titling of his promoted products is also contained therein.

62. Exhibits 27 through 36, are herein incorporated as reference as if fully set forth herein. The Internet Archive utilizes a tool named the "Wayback Machine". It has a spidering mechanism which crawls the internet and saves a snapshot of a website at given time and stores said information for public record. Attached are images of Counterclaim-defendant Jaime's website www.marijuanamillionaire.com throughout different periods of time from March 03, 2010 through September 30, 2021 in a descending chronological order. Counterclaim-plaintiffs Venicekush Trustees contend that the doctored image used by Counterclaim-defendant Jaime

was never utilized before 05/20/2019.

FIRST COUNTERCLAIM
FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C §1114
LANHAM ACT §43(A)

63. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64. In order to prevail on a claim of trademark infringement, a plaintiff or Counter plaintiff must establish that it has a valid mark entitled to protection and that the defendant or Counter-defendant used the same or a similar mark in commerce in connection with the sale or advertising of goods or services without the plaintiff's or Counter-plaintiff's consent. The plaintiff or Counter-plaintiff must also show that defendant's or Counter-defendants use of the mark is likely to cause confusion as to the affiliation, connection or association of defendant with plaintiff or Counter-plaintiff, or as to the origin, sponsorship, or approval of defendant's or Counter-defendant's goods, services or commercial activities by plaintiff or Counter-plaintiff. See 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400 (2d Cir. 2005). Thus, "use," "in commerce," and "likelihood of confusion" are three distinct elements necessary to establish a trademark infringement claim.

65. Counterclaim-plaintiffs Venicekush Trustees contend the "use" element necessary to establish a trademark infringement claim is satisfied by Exhibits 37, 38, and 39, which are herein incorporated as reference as if fully set forth herein. These Exhibits display the advertising of the VENICEKUSH mark in various places, including a

1    billboard Plaintiff Counterclaim-defendant Jaime

2    erected on Lincoln Blvd, one of the busiest streets in not only Venice,

3    California but Southern California in general.

4

5    69. The "in commerce" element necessary to establish a trademark

6    infringement claim is supported by the facts herein beginning with

7    Exhibits 40 and 41, herein incorporated as references as if fully set forth

8    herein. Counterclaim-defendants website is open advertising across

9    interstate lines and in its operation, also effectively functions across

10   international lines even having one site in particular,

11   "marijuanamillionaire.com" having cloud servers hosting

12   his online spotify website in Quebec, Canada. With the negative reviews

13   Counterclaim-defendants receive, Counterclaim-defendants are

14   damaging the reputation and image of Counterclaim-plaintiff Hugo's

15   trademark VENICEKUSH. Counterclaim-plaintiff's contend that the

16   Exhibits satisfy the burden of proof of interstate transmission to show

17   "in commerce" use. United States v. Schaefer, 501 F.3d 1197,1198

18      (10th Cir. 2007)(requiring proof of interstate transmissions).

19

20   70. The "Likelihood of confusion" element is the central focus of any

21   trademark infringement claim. It exist when consumers viewing the

22   allegedly infringing mark would probably assume that the product or

23   service it represents is associated with the source of a different product

24      or service identified with a similar mark. The following two images

25   display Counterclaim-defendant Jaime's infringing mark next to

26   Counterclaim-plaintiff Hugo's true mark:

27    Venicekush Trustee                Plaintiff Jaime's
                             Hugo Moreno's mark.             infringing mark.
28

SECOND COUNTERCLAIM
FALSE DESIGNATION OF ORIGIN
15 U.S.C §1125(a)

71. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72. For a 15 U.S.C §1125(a) claim for False Designation of Origin there are three elements which must be satisfied. The first element being a false designation of origin. Exhibits 42 display terms used by Counterclaim-defendant Jaime and the therein represented entities in describing their products with such terms as "the real deal" and the like.

73. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraph 72 hereof and adds the second element to be satisfied is the false designation of origin has a substantial effect on interstate commerce of which Counterclaim-defendant Jaime and the therein represented entities through the advertising of the their infringing mark and inferior products on their website reach not only the entire United States public at large but the international public community as well.

74. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 71 through 73 hereof and adds the third element to be satisfied which is that the false designation of origin creates a likelihood of confusion among the consuming public. In satisfaction of this element paragraph 70 is herein incorporated as reference as if fully set forth herein.

### THIRD COUNTERCLAIM
### TRADEMARK DILUTION
15 U.S.C §1125(c)

75. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76. Dilution is comprised of two principal harms which are blurring and tarnishment. Dilution by blurring occurs when the distinctiveness of a famous mark is impaired by association with another similar mark or trade name. 15 U.S.C. § 1125(c)(2)(B) is hereby incorporated as reference as if fully set forth herein. The trademark VENICEKUSH is distinctive and famous in that the the namesake of the trademark is the City Los Angeles neighborhood Venice, which has for its mantra "World Famous Venice Beach" and see's over ten (10) million visitors per year, second only to Disneyland in Southern California. With an emerging and quickly growing Cannabis market, the Counterclaim-plaintiffs Venicekush Trustees contend Counterclaim-defendant Jaime and the therein represented entities' and their products and advertising are impairing and blurring the distinctiveness of Counterclaim-plaintiff Hugo's trademark. Counterclaim-defendant's are also harming Counterclaim-plaintiffs Venicekush Trustees by dilution by tarnishment which occurs when the reputation of a famous mark is harmed through association with another similar mark or trade name. 15 U.S.C. § 1125(c)(2)(C) is hereby incorporated as reference as if fully set forth herein. The inferior products and services utilized in commerce by Counterclaim-defendants continues to harm the reputation of the Counterclaim-plaintiffs. Exhibits 42 & 20 are herein incorporated as

references as if fully set forth herein as an example of the public damage being done to the mark due to these inferior products and services.

FOURTH COUNTERCLAIM
MAIL FRAUD - FRAUDS AND SWINDLES
18 U.S.C. §1341

77. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 76 hereof, as if fully set forth herein.

78. There are two elements in mail fraud. The first is having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and the second is use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989); see also Pereira v. United States, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited). With the Counterclaim-defendants lack of ownership rights and prior knowledge of Counterclaim-plaintiff Hugo's usage in commerce, the Cease and Desist's and other correspondence sent to Counterclaim-plaintiffs Venicekush Trustees are devices being used to attempt to fraudulently convey Counterclaim-plaintiff Trustee Hugo's trademark from his possession. Exhibit 43 is herein incorporated as reference as if fully set forth herein.

### FIFTH COUNTERCLAIM
### FALSE ADVERTISING
15 U.S.C §1125(a)

79. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges
paragraphs 1 through 78 hereof, as if fully set forth herein.

80. Under Section 43(a) of the Lanham Act, a claim can be made
against a defendant or Counterclaim-defendant for false or misleading
advertising. For a claim against a defendant for false advertising, the
following elements are met and the plaintiff must show that: (1)
defendant or Counter-defendant made false or misleading statements
as to his own products (or another's); (2) actual deception, or at least a
tendency to deceive a substantial portion of the intended audience; (3)
deception is material in that it is likely to influence purchasing
decisions; (4) the advertised goods travel in interstate commerce;
and (5) a likelihood of injury to plaintiff. However, the plaintiff does
not have to prove actual injury. Exhibits 37, 38, 40, and 41 are herein
incorporated as reference as if fully set forth herein as proof of the
satisfaction of elements for False Advertising.

### SIXTH COUNTERCLAIM
### UNFAIR COMPETITION
15 U.S.C §1125(a)

81. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges
paragraphs 1 through 80 hereof, as if fully set forth herein.

82. Unfair competition can be broken down into two broad categories
comprising of unfair competition, sometimes used to refer only to those

torts that are meant to confuse consumers as to the source of the product (also known as deceptive trade practices) and the other being unfair trade practices which comprises all other forms of unfair competition. What constitutes an "unfair" act varies with the context of the business, the action being examined, and the facts of the individual case. Two common examples of unfair competition are trademark infringement and misappropriation. Other practices that fall into the area of unfair competition include such activities as false advertising, "bait and switch" selling tactics, unauthorized substitution of one brand of goods for another, use of confidential information by former employee to solicit customers, theft of trade secrets, breach of a restrictive covenant, trade libel, and false representation of products or services. Although the law of unfair competition is mainly governed by state common law. Federal law may apply in the areas of trademarks, copyrights, and false advertising. If there is a conflict between federal and state law, the federal law will often triumph because of the doctrine of preemption. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 63 through 80 hereof, as if fully set forth herein in support of the elements for unfair competition.

### SEVENTH COUNTERCLAIM
### FEDERAL TRADEMARK COUNTERFEITING
### 18 U.S. Code § 2320

83. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84. In order to establish the criminal offense under 18 U.S.C. § 2320, the government must prove: (1) that the defendant trafficked or

attempted to traffic in goods or services; (2) that such trafficking, or attempt to traffic, was intentional; (3) that the defendant used a "counterfeit mark" on or in connection with such goods or services; and (4) that the defendant knew that the mark so used was counterfeit. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 63 through 70 and 79 through 80 hereof, as if fully set forth herein in support of the elements for unfair competition.

EIGHTH COUNTERCLAIM
FRAUD AND FALSE STATEMENTS
18 U.S.C. §1001(a)

87. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein.

88. Section 1001's statutory terms are violated if someone "falsifies, conceals or covers up by any trick, scheme or device a material fact" "makes any false, fictitious or fraudulent statements or representations," "makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" and, for cases arising after the 1996 amendments, the item at issue was material. Whether the above acts are criminal depends on whether there is an affirmative response to each of the following questions being; (1)Was the act or statement material? (2) Was the act within the jurisdiction of a department or agency of the United States? and (3)Was the act done knowingly and willfully? To satisfy the requirement for the 3 elements, respectively Counter-defendant Jaime filed multiple State of California

trademarks, a State of California Small Claims case, a USTPO
opposition hearing, website takedown emails and a myriad of other
qualifying incidents. A preponderance of evidence is herewith
Exhibited through Exhibits Here, herein incorporated as reference as
if fully set forth herein.

### NINTH COUNTERCLAIM
MISREPRESENTATION
33 U.S.C. §931(a)(1)

89. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges
paragraphs 1 through 88 hereof, as if fully set forth herein.

90. Whether it is called common law fraud, fraudulent
misrepresentation, or intentional misrepresentation, the elements of the
claim are the same. The first three elements largely address the
defendant's conduct or state of mind, and the last two address the
plaintiff's. The elements are: (1) The defendant made a false
representation of a past or existing material fact susceptible of
knowledge. (2) The defendant did so knowing the representation was
false, or without knowing whether it was true or false. (3) The
defendant intended to induce the plaintiff to act in reliance on that
representation. (4) The plaintiff acted in reliance on the defendant's
false representation. (5) The plaintiff suffered pecuniary damage as a
result of that reliance. Counterclaim-plaintiffs Venicekush Trustees
repeats and realleges paragraphs 1 through 89 hereof, as
if fully set forth herein in support of the elements for Misrepresentation.

TENTH COUNTERCLAIM
PASSWORD TRAFFICKING
18 U.S.C. § 1030(a)(6)

91. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges
paragraphs 1 through 62 hereof, as if fully set forth herein.

92. Trafficking in Computer Access(18 U.S.C. 1030(a)(6))Paragraph
1030(a)(6) outlaws misconduct similar to the access device
proscriptions of Section1029. The elements of the crime are
knowingly and with an intent to defraud trafficking in (i.e., "to
transfer, or otherwise dispose of, to another, or obtain control of
with intent to transfer or dispose of" (18 U.S.C. 1029(e)(5))
a computer password or similar computer key either of a federal
computer or in a manner that affects interstate or foreign commerce.
Penalties: not more than one year (not more than 10 years for repeat
offenders) and/or a fine under Title 18, 18 U.S.C. 1030(c)(2).
Offenders are also civilly liable to their victims, 18 U.S.C1030(g).
Other crimes: The generally applicable provisions dealing with
attempt, conspiracy, and complicity will apply with equal force
 in cases involving paragraph 1030(a)(6). Paragraph1030(a)(6)
appears to have few counterparts in federal law, other than the
prohibition against trafficking in access devices (credit card
fraud) under 18 U.S.C. 1029(a)(2) and the wire fraud provisions
of 18 U.S.C. 1343. Nevertheless, either of these may provide the
foundation for a RICO (18 U.S.C. 1962) or money laundering
(18 U.S.C. 1956, 1957) prosecution, so that should conduct
in violation of paragraph 1030(a)(6) also offend either the mail
fraud or credit card fraud prohibitions, a criminal breach of RICO
 or the money laundering

provisions may also have occurred. Exhibits Here are herein incorporated as reference as if fully set forth herein in support of the elements for Password Trafficking.

### ELEVENTH COUNTERCLAIM
### ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT
### 15 U.S.C. §1125(d)

93. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 92 hereof, as if fully set forth herein.

94. In a claim made using the Anti-Cybersquatting Consumer Protection Act a plaintiff must prove the following elements to establish a claim of cybersquatting; (1)The defendant or Counterclaim-defendant has a bad faith intent to profit from that mark, including a defendant or Counterclaim-defendant name which is protected as a mark; and (2) Registers, traffics in, or uses a domain name that: (I) In the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) In the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of 18 U.S.C. § 706 (the Red Cross, the American National Red Cross or the Geneva cross) or 36 U.S.C. § 220506. In determining whether a person has a bad faith intent described above, a court may consider factors such as, but not limited to: (1) The trademark or other intellectual property rights of the person, if any, in the domain name; (2) The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(3) The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (7) The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. Defendant Counterclaim-plaintiffs Venicekush Trustees seek 1) Injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name

to the plaintiff, 15 U.S.C. §1129(2). (2) Costs and attorneys' fees to the prevailing party, at the court's discretion, 15 U.S.C. §1129(2).

## TWELFTH COUNTERCLAIM
## DECLATORY & INJUCTIVE RELIEF

95. Counterclaim-plaintiffs Venicekush Trustees repeats and realleges paragraphs 1 through 94 hereof, as if fully set forth herein.

96. On September 17, 2010 Counterclaim-plaintiff Hugo purchased a domain and web hosting for his trademark Venicekush. Beginning with shirts and hats, Counterclaim-plaintiff Hugo has been steadily building and adding to his mark brand and reputation providing consumers with apparel and products with quality they can count on.
Counterclaim-defendants first verifiable usage of the trade name VENICEKUSH/VENICE KUSH is in mid 2015 as originally self authenticated by Counterclaim-defendant Jaime.

97. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Counterclaim-plaintiffs Venicekush Trustees respectfully demands a declaration of ownership rights in the trade name NICEKUSH/VENICE KUSH

98. A stay, temporary restraining order, preliminary injunction, and permanent injunction is also necessary to prohibit the Connterclaim-defendants asserting any claim of First Use in regards to the trade name VENICEKUSH/VENICE KUSH.

99. A stay, temporary restraining order, preliminary injunction, and

permanent injunction is also necessary to prohibit the Counterclaim-defendants asserting any claim of ownership rights in regards to the trade name VENICEKUSH/VENICE KUSH.

100. By reason of the foregoing, Counterclaim-defendants are liable in the amount of $61,3000,000.00, plus interest, attorneys' fees, costs. Defendant Counterclaim-plaintiffs Venicekush Trustees are entitled to Declaratory and Injunctive relief.

WHEREFORE, Defendant Counterclaim-plaintiffs Venicekush Trustees respectfully requests that the Court enter judgment as follows:

A. Dismissing plaintiff Jame Moreno's, and all entities represented therein and their claims with prejudice.

B. On Defendant Counterclaim-plaintiffs Venicekush Trustee's First Counterclaim, declaring that Plaintiff Counterclaim-defendants' use of its VENICEKUSH/VENICE KUSH mark and trade name does and will, (a) cause confusion or mistake or deceive the public in violation of Lanham Act § 32(1) (15 U.S.C. § 1114(1)); (b) constitute unfair competition or a false designation of origin in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (c) constitute unfair competition or trademark infringement under federal statutory, state statutory or common law; (d) constitute dilution in violation of Lanham Act § 43(c) (15 U.S.C. §1125(c)); (e) constitute dilution in violation of state statutory or common law; or (f) otherwise violate state or federal statutory or common law.

C. On information and belief, Plaintiff Counterclaim-defendants'

trademark infringement will continue unless enjoined by this Court. Pursuant to 15 U.S.C.A. § 1116, Defendant Counterclaim-plaintiffs seeks a preliminary and permanent injunction against further trademark infringement by Plaintiff Counterclaim-defendants.

D. Counterclaim-defendants' acts of trademark infringement have damaged Defendant Counterclaim-plaintiffs' in an amount to be determined at trial, but in no event less than $8,000,000 dollars. Pursuant to 15 U.S.C.A. § 1117, Defendant Counterclaim-plaintiffs are entitled to, among other things, seek Plaintiff Counterclaim-defendants profits, statutory damages, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

E. Plaintiffs Counterclaim-defendants' acts of trademark infringement have been and continue to be deliberate and willful and warrant an award of enhanced damages. Accordingly, Defendant Counterclaim-plaintiff is entitled to and seek a finding that this case is exceptional and warrants an award of treble damages and attorneys' fees pursuant to 15 U.S.C.A. § 1117.

F. Defendant Counterclaim-plaintiffs Venicekush Trustee's respectfully seek an order for the cancellation of State of California Trademark Registration Numbers 02014498, 02014397, 02005429, 02005249, 02004268, 02003690, 02003674 pursuant to Section 37 of the Lanham Act (15 U.S.C. § 1119).

G. On Defendant Counterclaim-plaintiffs Venicekush Trustees

Second Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, but in no event less than statutory damages plus interest/attorneys' fees/costs/, 15 U.S.C. Defendant Counterclaim-plaintiffs also seek Injunctive relief, 15 U.S.C. §1116(a) §1117(a).

H. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Third Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, plus interest/attorneys' fees/costs/ Defendant Defendant Counterclaim-plaintiffs Venicekush Trustee's also pray for Injunctive relief from Plaintiff Counterclaim-defendant's infringement and for a willful violation, any damages sustained by the Defendant Counterclaim-plaintiffs, Plaintiff Counterclaim-defendant's profits, and the costs of the action, 15 U.S.C. §1117(a).

I. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Fourth Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, but in no event less than $5,000,000, plus interest/attorneys' fees/costs/Defendant Counterclaim-plaintiffs Venicekush Trustee's also seek injunctive relief barring Plaintiff Counterclaim-defendant's from continuing to mail threatening communications through the US Postal Service.

J. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Fifth Counterclaim, awarding damages in favor of Defendant

Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be
determined at trial, but in no event less than $32,000,000, plus
interest/attorneys' fees/costs/ Defendant Counterclaim-plaintiffs
Venicekush Trustee's also seek injunctive relief (15 U.S.C. 1116(a)).

K. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Sixth
Counterclaim, awarding statutory damages in favor of Defendant
Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be
determined at trial, but in no event less than $100,000, plus
interest/attorneys' fees/costs / Defendant Counterclaim-plaintiffs
Venicekush Trustee's also seek Injunctive relief (15 U.S.C. 1116(a)). .

L. On Defendant Counterclaim-plaintiffs Venicekush Trustee'
s Seventh Counterclaim, awarding damages in favor of Defendant
Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be
determined at trial, but in no event less than $16,000,000 (15 U.S.C.
§1117(c)(2)), plus interest/attorneys' fees/costs/Defendant
Counterclaim-plaintiffs Venicekush Trustee's also seek Injunctive
relief (15 U.S.C. 1116(a)).

M. On Defendant Counterclaim-plaintiffs Venicekush Trustee's
Eighth Counterclaim, awarding damages in favor of Defendant
Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be
determined at trial, but in no event less than the statutory maximum,
plus interest/attorneys' fees/costs/. Defendant Counterclaim-plaintiffs
  Venicekush Trustee's also seek injunctive relief.

N. On Defendant Counterclaim-plaintiffs Venicekush Trustee's

Ninth Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, but in no event less than the statutory maximum, plus interest/attorneys' fees/costs/. Defendant Counterclaim-plaintiffs Venicekush Trustee's also seek injunctive relief.

O. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Tenth Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, but in no event less than the statutory maximum, plus interest/attorneys' fees/costs/. Defendant Counterclaim-plaintiffs Venicekush Trustee's also seek injunctive relief.

P. On Defendant Counterclaim-plaintiffs Venicekush Trustee's Eleventh Counterclaim, awarding damages in favor of Defendant Counterclaim-plaintiffs Venicekush Trustee's, in an amount to be determined at trial, but in no event less than $200,000 dollars, plus interest/attorneys' fees/costs. Defendant Counterclaim-plaintiffs Venicekush Trustee's also seeks Forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark, 15 U.S.C. §1125(d)(1)(C)

Q. Awarding Defendant Counterclaim-plaintiffs Venicekush Trustee's its reasonable costs and fees including attorneys' fees pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

R. Granting Defendant Counterclaim-plaintiffs Venicekush Trustee's such other and further relief as the Court may deem just

1    and proper.

2

3    Dated: September 28, 2021

4    VENICE, CALIFORNIA

5                                          Respectfully submitted,

6                                          VENICEKUSH BUSINESS TRUST

7

8                                          Hugo Moreno
                                           2554 Lincoln Blvd. #412
9                                          Venice, California 90291
                                           info@venicekush.com
10

11                                         BY: 
                                           Jason Abraham-El
12                                         2554 Lincoln Blvd. #412
                                           Venice, California 90291
13                                         info@venicekush.com

14

15                                         *in eorum propria persona's*

16                                         Hugo Moreno, Trustee;
                                           Jason Abraham-El, Trustee;
17                                         Venicekush Business Trust dba
                                           Venicekush Collective

18

19

20

21

22

23

24

25

26

27

28